**PACIFIC GREYHOUND LINES v. RUMEH.**

**PACIFIC GREYHOUND LINES v. RHODES.**

**No. 12237.**

United States Court of Appeals
Ninth Circuit.

Dec. 19, 1949.

Baker & Whitney, Alexander B. Baker, Harold E. Whitney, Phoenix, Ariz., for appellant.

Krucker & Evans, Tucson, Ariz., David J. Smith, El Paso, Tex., for appellee George Rumeh.

Hall, Catlin & Molloy, Tucson, Ariz., for appellee Bertha Lucille Rhodes.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment in favor of two of appellant's paying passengers held to have been negligently injured while traveling in New Mexico in one of appellant's busses running easterly on the highway from Las Cruces. Appellee Rumeh brought suit in the United States District Court for the District of Arizona. Appellee Rhodes filed her suit in the Superior Court of Pima County, Arizona, from which it was duly removed to the court below. The necessary diversities and amounts sought to be recovered exist for the federal jurisdiction. Apart from the questions of the amount of damages suffered, the pertinent facts in each case are the same and the cases were heard on the same testimony as to negligence.

The collision was with a Ford auto of 3,200 pounds' weight which, traveling westerly, swerved southerly across to its left. It was struck by the oncoming bus weighing 18,000 pounds with such force that the Ford car was driven backwards a distance of 144 feet before coming to stop off the paved highway.

The legally established speed limit on the highways of New Mexico is 45 miles per hour. There is evidence that the bus was traveling in excess of that speed. Its time limit between the stations before and after the collision required an average speed in excess of 45 miles per hour, and its driver stated he was traveling at his usual speed.

It is the law of New Mexico, though not of Arizona, that such violation of the statutory speed limit is negligence per se. Clay v. Texas-Arizona Motor Freight, Inc., 49 N.M. 157, 159 P.2d 317; Bell v. Carter Tobacco Co., 41 N.M. 513; 71 P.2d 683; Pettes v. Jones, 41 N.M. 167, 66 P.2d 967.

Appellant agrees that in such a situation the conflict of law is to be determined by Section 380 of The Restatement of Conflict of Laws. Section 380(2) provides: "Where by the law of the place of wrong, the liability-creating character of the actor's conduct depends upon the application of a standard of care, and such standard has been defined in particular situations by statute or judicial decision of the law of the place of the actor's conduct, such application of the standard will be made by the forum."

In accord is the Arizona case of Friedman v. Friedman, 40 Ariz. 96, 99, 9 P.2d 1015, 1017, where it is stated: "The accident occurred in the state of California, and, while an action of this nature is transitory, and since Maricopa County was the residence of appellee, the superior court of such county had jurisdiction thereof, the liability of appellee should be determined, not by the law of Arizona, but by that of California. This is true as to the right of recovery for negligence."

Appellant contends that the swerving of the Ford car was so sudden that the collision was inevitable and hence assuming the New Mexico rule applies, its violation is not a proximate cause of the injuries. However, it is obvious that even if inevitable the negligent excess speed increased the violence of the impact and contributed to the injuries to appellees which, as later seen, were very severe, while the two occupants of the Ford car were killed.

Also contradicting the contention that the Ford car came on so suddenly that the driver of the bus could do nothing to lessen the

impact is evidence that he admitted he applied his brakes, and of a passenger, other than appellants, that there was such a stoppage of the speed of the bus before the collision that she was projected so violently against the seat in front of her that her teeth were broken. Skid marks 206 feet from the point of impact well could have been caused by the application of the brakes. There was also testimony that the Ford car left its side of the road on a "long arc", "a gradual arc" observable by the bus driver, rather than the sudden turn claimed by the appellant.

We are of the opinion that the jury was entitled to find that the speed of the bus negligently contributed to the violence of the collision and caused the injuries for which they rendered their verdict. The verdict is sustained by the evidence, whether considered under the applicable New Mexico law or that of Arizona.

The severity of the impact of the collision on the appellants warrants the amounts awarded by the jury. The undisputed testimony adduced upon the trial is that the plaintiff, George Rumeh, suffered a scalp wound, a broken nose, fracture of the right humerus at the shoulder joint, a fractured rib on both right and left sides and a reactivation of the tuberculosis which had been in an arrested stage before the accident. The testimony of Dr. Long on this point is as follows:

"Q. By Mr. Carlton: What was the result of your examination? A. Well, I found that the old tuberculosis lesion *had been reactivated* by the injuries, and that the fluid in the pleural cavity had increased and the right lung had shrunk and become more incapacitated." (Emphasis supplied.)

And again Dr. Long testified and replied to a further question:

"Q. By Mr. Carlton: What did you find on this last examination as regards his tubercular condition? A. Well, his lung was contracted and the tissue that was air-containing tissue when I first saw him has now contracted and there is no air going into it. *His right lung is not functioning at all.*"

With respect to the fracture of the humerus, Dr. Long testified as follows:

"Q. By Mr. Carlton: From your examination of him last week, state whether or not it is your opinion that that condition has improved or has gotten worse or is the same. A. He can move this function of the shoulder joint very slightly, but when he moves this arm the shoulder blade has to go with it. It has to work up and down like a hinge, and a fixation in here, where this femur, humerus, doesn't rotate in the shoulder joint. He has to work the shoulder blade to work the arm to any great extent."

Dr. Long further testified that the injuries from which the plaintiff, George Rumeh, was suffering at the time of the trial of this case were permanent and total. Such injuries and their permanence, with the likelihood of further expenditure for their treatment, support the verdict for appellee Rumeh of $21,000, when the present value of the dollar is considered.

The evidence conclusively shows that appellee Rhodes suffered a dislocated back, was greatly shocked and bruised, and lost two front teeth as a result of the accident. She has suffered severe pain and discomfort since the time of the accident and under the evidence her physical condition has become progressively worse. She has expended approximately $690 for medical care and unquestionably will spend substantial sums for continued medical treatment in the future. Because of her injuries she will be unable to attend to her household duties or perform any work of any consequence.

The X-ray pictures disclose a misplaced vertebra or a condition of spondylolisthesis. Dr. Secrist testified that "This is severe spondylolithesis, the slipping of one vertebra on one below." Both Dr. Thomas and Dr. Secrist testified that her back condition was sufficient to cause the soreness and pain of which she complains.

Prior to the time of the accident, Mrs. Rhodes was a housewife and mother and of the age of 45 years, with a life expectancy of 26.72. We think the sum of $11,000 is not excessive in her case. Damages for pain and suffering are peculiarly within the discretion of the jury.

The judgment in each case is affirmed.